**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: August 14 2018**

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 18-30558 |
| | ) | |
| Apollos Nwankaire Njoku, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge John. P. Gustafson |

### MEMORANDUM OF DECISION AND ORDER REGARDING U.S. TRUSTEE'S MOTION UNDER 11 U.S.C. §§110, 526 *et seq.*

This case came before the Court for hearing on May 22, 2018 pursuant to the United States Trustee Daniel McDermott's ("UST") Motion Under 11 U.S.C. §§110, 526 *et seq.* ("Motion") [Doc. #18]. In the Motion, the UST seeks various forms of relief in connection with Home Rescue Team LLC and/or HRT Consulting's ("HRT") involvement in Debtor Apollos Nwankaire Njoku's ("Debtor") filing for bankruptcy under Chapter 13.

This is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (O) and venue is proper under 28 U.S.C. §1409(a). The court has jurisdiction over core proceedings under 28 U.S.C. §§1334 and 157(a) and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio.

Because the court finds that HRT is a debt relief agency and a bankruptcy petition preparer, and that its involvement in Debtor's filing for Chapter 13 bankruptcy constitutes conduct that

violates various provisions of the Bankruptcy Code, the court will grant the UST's Motion.

**FACTUAL BACKGROUND**

Debtor filed for Chapter 13 bankruptcy relief on March 5, 2018 [Doc. #1] via a "skeleton filing" - Debtor did not file any Schedules, the Statement of Financial Affairs, a Means Test form, or a Chapter 13 Plan. Additionally, Debtor's creditor matrix listed only one creditor ("Deutsche Bank National Trust Co.") [*Id.*, p. 12] and the boxes that were checked on Debtor's Petition indicated that: 1) Debtor was proceeding *pro se*; 2) Debtor was aware that filing for bankruptcy is a serious action with long-term financial and legal consequences; 3) Debtor was aware that bankruptcy fraud is a serious crime and that inaccurate or incomplete forms could lead to fines or imprisonment; and 4) Debtor did not pay or agree to pay someone who is not an attorney to help him fill out his bankruptcy forms. [*Id.*, p. 8]. At the same time, Debtor also filed an Application to Pay Filing Fee in Installments. [Doc. #4].

The court set Debtor's Application to Pay Filing Fee in Installments for a hearing to be held on April 3, 2018. [Doc. #5]. Having not received any of the required filing documents from Debtor, the court entered a second Order to Show Cause on the failure to file required documents that was also scheduled for hearing on April 3, 2018. [Doc. #9].

At the April 3rd hearing, Debtor appeared in person and informed the court that when he had filed for bankruptcy on March 5th, he did not understand what was going on, and that he had not known what he had come to the courthouse for. [Ex. 4, p. 2]. Debtor stated that he had been brought to the courthouse by a man from Cincinnati and that there was a long story behind his filing that he needed to tell the court. [*Id.*].

Debtor explained that the process leading to his unknowingly filing for bankruptcy began when he received a postcard in the mail claiming that HRT would be able to help stop a sheriff's sale of his home. [*Id.*, p. 3]. Debtor provided the court with the original postcard, which identifies the street address of Debtor's residence, states that Debtor's residence was subject to a pending sheriff's sale, provides a contact phone number, and asserts that the sender "Can Stop The Sheriff Sale TODAY!!!" [Ex. 1, pp. 1-2]. The return address describes the sender as an entity named "HRT Consulting" located at 407 Vine St, Ste. 115, Cincinnati, OH 45202. [*Id.*, p. 1].

Debtor recounted that, prior to filing for bankruptcy, he called the number on the back of the postcard a few times and first spoke with an older woman, whose explanation he did not understand. [Ex. 4, pp. 3-4]. Debtor called again in the evening and spoke with a man who told

2

Debtor that he helped people avoid home foreclosures. [*Id.*, p. 4]. Debtor asked the man if he was an attorney, and the man said that he was not. [*Id.*, p. 8]. Debtor then agreed to utilize HRT's services because he needed time to gather funds so that he could resume making payments on his home mortgage. [*Id.*].

Debtor further recounted that, on the date of his bankruptcy filing, he met with a man from Kentucky at a restaurant near the courthouse. [*Id.*, pp. 4, 13]. There, Debtor was rushed through signing a variety of documents that he did not have time to read. [*Id.*, pp. 4-5]. Debtor then accompanied the man to the courthouse, where Debtor was unsure of what happened or what the man did. [*Id.*, p. 5].

After listening to the Debtor's explanation of what led to his bankruptcy filing, the court set the matter for further hearing on April 24, 2018 so that Debtor could investigate his options and decide whether he wanted to continue with his Chapter 13 bankruptcy. [Doc. ##13, 14]. The court also informed Debtor that the UST's office would be notified in case they wanted to investigate the individuals/entities involved in Debtor's Chapter 13 filing. [Ex. 4, pp. 14-15].

On April 18, 2018, the UST filed the Motion seeking relief against HRT Consulting and/or the individuals/entities that took part in Debtor's Chapter 13 filing. [Doc. #18]. The Motion was set for hearing on May 22, 2018. [Doc. #19]. The court held a further hearing on both its Order to Show Cause and Debtor's Application to Pay Filing Fee in Installments on April 24, 2018, at which Debtor and Debtor's newly retained counsel appeared in person, and two attorneys representing the UST appeared by phone. Debtor asked the court to continue both matters to May 22, 2018 so that they could be considered together with the UST's Motion. The court agreed and set all pending matters for further hearing on May 22, 2018. [Doc. ##23, 24].

Around noon on May 22, 2018, shortly before Debtor's hearing, an individual named Garrett Stevenson filed a document in Debtor's case entitled "Conditional Acceptance of Debt Upon Proof of Claim" ("HRT Document") on behalf of Home Rescue Team LLC.[1] [Doc. #28]. Though styled as an affidavit of HRT, the HRT Document contains a variety of questions, incomplete statements, and jumbled attempts at legalese. [*Id.*]. The HRT Document also provides an address for Home Rescue Team LLC - "407 Vine Suite 115 Cincinnati, Ohio [45202]" [*Id.*, p.

---

1/ Though the names differ slightly, the court regards HRT Consulting and Home Rescue Team LLC as the same entity for purposes of the UST's Motion given the similarity of the names and the fact that both appear to share the same address. *Compare*, [Ex. 1, p. 1] *with* [Doc. #28, p. 3].

3] - an address that corresponds to the one listed on the postcard Debtor received. [Ex. 1].

At the May 22nd hearing, Debtor, Debtor's counsel, and Amy Good, an attorney representing the UST, appeared in person. Debtor informed the court that he did not want to proceed with this Chapter 13 filing, and the court then dismissed the case on its prior Order to Show Cause while reserving jurisdiction over the UST's Motion. The UST then argued in support of the Motion and informed the court that this was now the second case involving HRT to come before the court.[2] The UST called Debtor to the stand and presented his sworn testimony detailing HRT's involvement in his Chapter 13 filing. While Debtor's recounting of his story substantially matched with what he had said at the April 3rd hearing, Debtor also provided additional details.

Debtor testified that, when he first received the HRT postcard, his house was in foreclosure and would soon be sold at a sheriff's sale. Given that the sender of the postcard claimed to be able to stop the sale, Debtor called the number on the back of the card a number of times and was eventually told by an unnamed individual that if he paid $600.00, HRT could stop the sheriff's sale of his home. Debtor asked the HRT representative what exactly HRT would do to stop the sale, but was given no direct answer. Debtor nevertheless accepted HRT's offer, transferred the $600.00 in two installments [Ex. 1, p. 6], and was then told to meet with an HRT representative at a downtown Toledo restaurant so that he could fill out the necessary paperwork.

At the restaurant, on the day that Debtor filed his bankruptcy petition, the HRT representative met with Debtor late that afternoon and would not identify himself other than to inform Debtor that he represented HRT. Debtor again asked the HRT representative for specifics as to what HRT planned to do, and the representative informed him that they would be stopping the sheriff's sale of Debtor's house for six to nine months. The HRT representative told Debtor that it was a provision of federal law that allowed for the stopping of sheriff's sales, but made no mention of bankruptcy and provided Debtor with no further details. Debtor testified that if he had known that he would be filing for bankruptcy, he would not have agreed to go forward with HRT's proposal.

Debtor testified that, at the restaurant, he was rushed through the signing of various forms and was told by the HRT representative that they needed to hurry in order to file the paperwork in time. Debtor stated that he was given no time to read or understand the documents he was signing.

---

2/ In *In re Blanton*, Case No. 17-31282, a debtor filed a skeleton petition after having received a postcard from HRT, much like the Debtor in this case.

Upon being presented with the skeleton petition and related documents during his testimony, Debtor positively identified them as the documents he had previously signed. Debtor noted that all of the box-checking had been done by the HRT representative and that he only signed documents and provided his home address.

After signing the documents, Debtor and the HRT representative rushed over to the courthouse in separate vehicles. Debtor testified that, once they were at the courthouse, the HRT representative appeared to be helping other people in addition to Debtor, but could not be sure how they were involved. Debtor stated that he waited in the hallway while the HRT representative dealt with the paperwork, but could not be sure as to what exactly happened while he waited. After an undefined amount of time, the HRT representative told the Debtor that the filing had been completed and that his home was safe. The HRT representative and Debtor then went their separate ways and left the courthouse. The HRT representative did not provide Debtor with any copies of the forms that were filed. Notably, it appears that the Debtor did not receive the pre-petition credit counseling "briefing" required under §109(h)(1).

Debtor realized that he had filed for bankruptcy when he received letters from Chapter 13 Trustee Elizabeth Vaughan. He called the number on the back of the HRT postcard numerous times, but was repeatedly told that the HRT representative he had met with was on the West Coast and was unavailable. Debtor also tried calling the cellphone of the HRT representative he had previously met with, but received no response. Debtor could not recall the cellphone number while testifying, but stated that he believed it included a Kentucky area code.

After Debtor reviewed the transcript from the April 3rd hearing and confirmed that what he had said continued to be true and accurate, the Debtor left the stand and the UST rested its case.

In its Motion, the UST specifically seeks: 1) a review of services provided to Debtor by HRT; 2) an order holding HRT liable for, and requiring disgorgement of, Debtor's fees and charges incurred in connection with this bankruptcy proceeding; 3) the nullification of any contract existing between HRT and Debtor and the assessment of actual damages; 4) an order requiring that HRT turnover a list of all bankruptcy cases filed in the Northern District of Ohio since January 1, 2017 in which HRT provided debtors with debt relief services; 5) an order enjoining HRT from providing debt relief or other related services to prospective debtors in the Northern District of Ohio; and, 6) any other relief available under §§110, 526, 527, and 528.

## LAW AND ANALYSIS

At issue here are the provisions of the Bankruptcy Code that govern the involvement of "debt relief agencies" and "bankruptcy petition preparers" in the preparation and filing of bankruptcy cases. *See*, 11 U.S.C. §§110, 526, 527, 528.

### I.     HRT is a "Debtor Relief Agency" Under 11 U.S.C. §§526, 527, and 528

The Code defines a "debt relief agency" as: "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110…." 11 U.S.C. §101(12A). Individuals or entities that qualify as "debt relief agencies" are subject to a variety of rules and requirements as laid out in §§526, 527, and 528. *See*, *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 233, 130 S.Ct. 1324, 1330, 176 L.Ed.2d 79 (2010).

Relevant to the issues here, debt relief agencies are prohibited from making false or misleading statements,[3] and/or misrepresenting the services to be provided or the benefits and risks of initiating bankruptcy proceedings.[4] *See*, *In re Humphries*, 453 B.R. 261, 263 (E.D. Mich. 2011). Debt relief agencies must also provide prospective debtors with notices and disclosures that detail the different forms of bankruptcy relief available under the Code, the availability of credit counseling services, and a debtor's obligations upon filing. *See*, 11 U.S.C. §527(a)-(d); *Humphries*, 453 B.R. at 263. Additionally, a debt relief agency's advertisements must disclose that its services may relate to bankruptcy,[5] and a debt relief agency must execute a written contract with a debtor within five days of first providing services.[6]

Should a debt relief agency fail to comply with the above requirements, a court may: 1) void a contract or agreement for services; 2) require the disgorgement of fees/charges paid and hold the debt relief agency liable for actual damages, attorney's fees, and costs; and/or, 3) upon a showing of intentional or continuing violations, impose an injunction and/or civil penalties. 11 U.S.C. §526(c)(1)-(5); *Humphries*, 453 B.R. at 263-64.

Upon review of the UST's arguments and evidence presented at the May 22nd hearing, including Debtor's testimony, the court finds that HRT qualifies as a "debt relief agency" because it provided Debtor with "bankruptcy assistance" by facilitating Debtor's skeleton filing in return

---

3/   11 U.S.C. §526(a)(2).
4/   11 U.S.C. §526(a)(3).
5/   11 U.S.C. §528(a)(3)-(4), (b)(1)-(2).
6/   11 U.S.C. §528(a)(1)-(2).

6

for Debtor's payment of $600.00. *See*, 11 U.S.C. §101(12A).

The court further finds that Debtor's credible testimony established that HRT's conduct as a debt relief agency violated numerous provisions of the Code. By failing to inform Debtor that it would attempt to "save" his home from foreclosure through the filing of a Chapter 13 bankruptcy petition, HRT intentionally mislead Debtor and misrepresented both the services it would provide and the ramifications of pursuing bankruptcy relief. *See*, 11 U.S.C. §526(a)(2)-(3). While the evidence regarding HRT's intent in providing Debtor with services is circumstantial and confined to Debtor's testimony, the documents filed in Debtor's case, and the postcard solicitation, the court finds that HRT must have acted intentionally when it convinced Debtor that it would "save" his house without informing him that he would actually be filing for Chapter 13 bankruptcy, particularly given the extent to which HRT prevented Debtor from ascertaining what it intended to do via rushing Debtor through signing forms and avoiding his questions. In other words, the record before the court establishes that HRT intentionally mislead Debtor when it continuously avoided informing him that its services required the filing of a bankruptcy petition.

The fact that HRT rushed Debtor through the signing of forms without any verbal or written explanations, together with the documents that were filed and HRT's failure to appear and introduce documentation to the contrary, constitute evidence supporting the court's finding that HRT failed to provide Debtor with the disclosures required under §527. Because HRT's postcard was an advertisement that fails to disclose its relation to bankruptcy, the court also finds that HRT violated §528's advertising notice requirements. Further, HRT failed to execute a written contract with Debtor as required by §528(a)(1).

As a result of HRT's violations of §§526, 527, and 528, the court finds the following relief to be appropriate: 1) HRT must disgorge the $600.00 paid by Debtor[7]; 2) any contract or agreement between Debtor and HRT is held to be null and void; and, 3) HRT is enjoined from providing debt relief services to prospective debtors in the Northern District of Ohio that violate 11 U.S.C §§526, 527, and 528.

While the UST has also moved for a court order requiring that HRT turnover a list of any and all other debtors it has provided services to in the Northern District of Ohio, there does not appear to be a clear statutory basis for this remedy. Further, HRT is not presently in violation of

---

7/ The court notes that Debtor did not present evidence of actual damages aside from the $600.00 he paid to HRT for its services.

a standing court order. Accordingly, based upon the evidence before the court in this case, the court denies that portion of the UST's Motion.

## II. HRT is a "Bankruptcy Petition Preparer" under 11 U.S.C. §110

The Code defines a "bankruptcy petition preparer" ("BPP") as: "a person, other than an attorney for the debtor or an employee of such attorney,… who prepares for compensation…a petition or any other document prepared for filing by a debtor…in connection with a case under this title." 11 U.S.C. §110(a)(1)-(2). Much like a debt relief agency, a BPP must comply with a number of rules and requirements. Relevant here, a BPP must include information identifying the preparer on every "document for filing" prepared. 11 U.S.C. §110(b)(1), (c)(1). Further, "the petition, the schedules, the statement of intention, the statement of financial affairs, and the verification of creditor matrix are each a separate 'document for filing' and may each give rise to separate violations of" §110. *In re Herrera*, 483 B.R. 222, 231 (Bankr. D. Colo. 2012). A BPP must also file a fee declaration alongside any documents it prepares on a debtor's behalf. 11 U.S.C. §110(h)(2).

A BPP's violation of the rules outlined in §110(b)-(h) can be punished by a fine of up to $500.00 per violation, 11 U.S.C. §110(l)(1), and said fines are tripled where a BPP fails to inform a debtor that the debtor is filing for bankruptcy or fails to identify itself on the forms it prepares. 11 U.S.C. §110(l)(2)(C)-(D); *see*, *Hills v. McDermott* (*In re Wicker*), 702 F.3d 874, 877-78 (6th Cir. 2012). Additionally, the local United States Trustee is empowered to bring an action to enjoin a BPP from engaging in violative conduct. 11 U.S.C. §110(j)(1).

The court finds that HRT qualifies as a BPP because it and its agents are non-attorneys that prepared documents that were subsequently filed in connection with Debtor's Chapter 13 bankruptcy case. *See*, 11 U.S.C. §110(a)(1)-(2). The court finds that, as a BPP, HRT: 1) failed to identify itself on the petition, schedules, and verification of creditor matrix it prepared for Debtor[8]; 2) failed to provide Debtor with copies of the forms it prepared for Debtor's signature[9]; and, 3) failed to file the required disclosure of its receipt of $600.00 from Debtor.[10]

Further, because HRT failed to inform Debtor that he was filing for bankruptcy and failed to identify itself on any of the forms it prepared, its violations trigger §110(l)(2)'s tripling of

---
8/ *See*, 11 U.S.C. §110(b)(1), (c)(1).
9/ *See*, 11 U.S.C. §110(d).
10/ *See*, 11 U.S.C. §110(h)(2).

8

damages. Thus, the court finds that HRT committed five separate $500.00 violations that are subject to tripling under §110(l)(2)(c)-(d) and will order that HRT be fined $7,500.00, made payable to the UST under §110(l)(4)(A). *See*, *Herrera*, 483 B.R. at 231. HRT must also pay Debtor $2,000.00 in statutory damages because the court finds that its conduct as a BPP was deceptive and fraudulent in violation of §110(i)(1)(B).

In light of the above findings, the court orders relief as follows:

**IT IS ORDERED** that the UST's Motion Under 11 U.S.C. §§110, 526 *et seq*. [Doc. #18] is **GRANTED.**

**IT IS FURTHER ORDERED** that HRT disgorge and turnover to the UST the $600.00 Debtor paid in connection with HRT's provision of services under 11 U.S.C. §526(c)(2), within 21 days of entry of this Order. HRT shall also pay the UST $2,000.00 in statutory damages pursuant to 11 U.S.C. §110(i)(1)(A)-(B) within 21 days of entry of this Order. The UST shall then remit those funds received to the Debtor, Apollos Nwankaire Njoku. The UST shall file with the court a certification of HRT's payment of the disgorgement and damages required by this Order.

**IT IS FURTHER ORDERED** that any agreement or contract that existed between HRT and Debtor is hereby held null and void pursuant to 11 U.S.C. §526(c)(1).

**IT IS FURTHER ORDERED** that HRT be, and hereby is, enjoined from providing debt relief services to prospective debtors in the Northern District of Ohio that violate 11 U.S.C §§526, 527, and 528, pursuant to 11 U.S.C. §526(c)(5)(A).

**IT IS FURTHER ORDERED** that HRT is fined $7,500.00 for violations of 11 U.S.C. §110(b)-(h), made payable to the UST under 11 U.S.C. §110(l)(4)(A).

**IT IS FURTHER ORDERED** that, if HRT fails to comply with the above Orders, HRT will be enjoined from providing any debt relief and related services to prospective debtors in the Northern District of Ohio.